IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 5:13-cr-00025 |
| v. ) | |
| ) | By:   Michael F. Urbanski |
| KAREEM ALLEN SHAW, ) | Chief United States District Judge |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Kareem Allen Shaw's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 615. The government opposes Shaw's motion, ECF Nos. 630, 633. For the reasons stated herein, the court will **GRANT** Shaw's motion and reduce his sentence to 194 months.

I.

On October 30, 2014, Shaw entered into a written plea agreement in which he pleaded guilty to one count of conspiring to possess with the intent to distribute a measurable quantity of a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. Plea Agreement, ECF No. 251. As shown in his presentence investigation report ("PSR"), Shaw's adjusted offense level was 40, but it was reduced to 37 because of his acceptance of responsibility. PSR, ECF No. 452, at 12. Because of his prior convictions, Shaw fell into criminal history category V. Id. at 16. His designation as a career offender elevated him to category VI. Id. Accordingly, his U.S. Sentencing Guidelines ("U.S.S.G.") range was 360 months to life. Id. at 19.

On April 22, 2015, the court sentenced Shaw to 216 months of incarceration and 5 years of supervised release. J., ECF No. 445. On July 13, 2015, Shaw filed a pro se motion for

a sentence reduction under 18 U.S.C. § 3582(c)(2), citing U.S.S.G. Amendment 782. Pro Se Mot. to Reduce Sentence, ECF No. 497. The court denied Shaw's motion because Shaw had been sentenced after Amendment 782 was implemented. Order, ECF No. 511.

On May 20, 2016, Shaw, through counsel, filed a motion to vacate and correct his sentence, ECF No. 527, on the basis that, in light of the Supreme Court's ruling in Johnson v. United States, 576 U.S. 591 (2015), the court would no longer classify him as a career offender if sentenced today, but Shaw later filed a notice of voluntary dismissal of that motion, ECF No. 554.

Shaw has been in continuous custody since March 13, 2014. Sentencing Monitoring Computation Data, ECF No. 615-1, at 2. He is currently housed at FCI Petersburg Low.[1] He is eligible for home detention on January 8, 2029, and is scheduled for release on July 8, 2029. Id. at 1–2.

Shaw seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that the COVID-19 pandemic and the inadequate response from the Federal Bureau of Prisons ("BOP")—particularly at FCI Butner Low, where Shaw was housed at the time he originally filed his motion—constitute "extraordinary and compelling" reasons warranting a sentence reduction. See Mot., ECF No. 615, at 3–4. Shaw also argues that he faces a higher risk of severe illness from COVID-19 because of his race. Id. at 6. Shaw is in "relatively good health" and has already tested positive for and recovered from COVID-19. Id. at 6–7. Shaw also contends in his motion that, because of post-sentencing Supreme Court precedent, he would

---

[1] Fed. Bureau of Prisons, Find an inmate., https://www.bop.gov/inmateloc/ (last visited July 8, 2021) (search "Kareem Allen Shaw").

no longer be classified as a career offender if re-sentenced today. Id. at 7–8. While Shaw notes this as part of his pandemic-related motion, the court construes his sentencing disparity arguments as an independent possible basis for compassionate release. The government opposes any sentence reduction for Shaw. Mem. in Opp'n, ECF No. 630. This matter is fully briefed and ripe for disposition.[2]

**II**.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Shaw's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons

---

[2] The court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

    i.    <u>Shaw has fully exhausted his administrative remedies.</u>

The provision allowing defendants, in addition to the Bureau of Prisons ("BOP"), to bring motions under § 3582(c) was added by the First Step Act to "increas[e] the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). Before bringing a motion before the district court, a petitioner must first exhaust his administrative remedies. <u>See</u> 18 U.S.C. § 3582(c)(1)(A). A petitioner must satisfy one of two conditions, whichever is earlier: (i) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or (ii) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" <u>Id.</u>; <u>see also</u> <u>United States v. McCoy</u>, 981 F.3d 271, 281 (4th Cir. 2020). The first condition requires that the defendant fully exhaust all administrative rights. This means that it is not enough for the warden to respond within 30 days by denying the request for compassionate release. If the warden denies the request within 30 days, the petitioner must then exhaust all administrative appeals available through the BOP. The second condition can only be met after the lapse of 30 days from when the warden received the petitioner's request and has not responded. Though the exhaustion requirement is a mandatory claim-processing rule, the government may waive or forfeit its satisfaction. <u>See</u> <u>United States v. Alam</u>, 960 F.3d 831, 834 (6th Cir. 2020); <u>see also</u> <u>United States v. Raia</u>, 954 F.3d 594, 597 (3d Cir. 2020).

Here, Shaw requested compassionate release from the warden of his facility on July 6, 2020, which the warden denied on July 9, 2020. Denial Letter, ECF No. 615-2. The letter

4

informed Shaw that he could appeal the denial through an internal administrative remedy process. Id. Shaw filed a motion for compassionate release with this court on August 16, 2020. Mot., ECF No. 615. It is not clear from the record that Shaw exhausted any administrative appeals available through the BOP prior to filing a motion with this court. The government, however, does not contest that Shaw exhausted his administrative remedies. Mem. in Opp'n, ECF No. 630, at 9. Accordingly, the court finds that Shaw exhausted his administrative remedies. To the extent that Shaw may not have fully exhausted any available administrative appeals, the government has waived the exhaustion requirement.

    ii.    <u>Shaw presents extraordinary and compelling reasons to warrant a sentence reduction.</u>

The court must next consider if it should "reduce the term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). The U.S.S.G. Manual § 1B1.13 application notes state that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the BOP, for "other reasons" than, or in combination with, those described in Application Notes (A)–(C). Id. at cmt. n. 1(A)–(D).

During the COVID-19 pandemic, this court has found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility. According to the Centers for Disease Control and Prevention, studies show that the "COVID-

19 vaccines are effective at keeping you from getting COVID-19" and "will also help keep you from getting seriously ill even if you do get COVID-19."[3]

Here, Shaw does not allege that he suffers from any of the underlying conditions that make him particularly susceptible to severe illness from COVID-19. Instead, Shaw contends that he faces a higher risk of severe illness from COVID-19 because of his race. Mot., ECF No. 615, at 6. According to the CDC, some racial and ethnic minority groups are being disproportionately affected by COVID-19,[4] but the CDC does not recognize race as a condition which inherently places an individual at an increased risk for severe illness from COVID-19.[5] Shaw already contracted COVID-19 once and, fortunately, recovered. Id. at 7. Shaw's recovery is encouraging and "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[6]

More importantly, Shaw was offered the Moderna COVID-19 vaccine on May 10, 2021, but refused it. Medical Records, ECF No. 665-1, at 2–3. Shaw's refusal undermines his contention that possible exposure to the pandemic justifies compassionate release. Though he has the right to refuse medical treatment due to concerns about its efficacy and safety, the refusal to take preventive measures addressing the concern at the heart of his motion is not

---

[3] Ctrs. for Disease Control and Prevention, Key Things to Know About COVID-19 Vaccines, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html?s_cid=10490:covid%20vaccination:sem.ga:p:RG:GM:gen:PTN:FY21 (updated June 25, 2021).

[4] Ctrs. for Disease Control and Prevention, Health Equity Considerations and Racial and Ethnic Minority Groups, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (updated Apr. 19, 2021).

[5] Ctrs. for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021).

[6] Ctrs. for Disease Control and Prevention, Reinfection with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (updated Oct. 27, 2020).

6

consistent with a sentence reduction. See, e.g., United States v. McBride, No. 5:19-CR-00007, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (denying request for compassionate release where petitioner refused vaccine); United States v. Lohmeier, No. 12 CR 1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) (same); United States v. Williams, No. CR-17-01279-001, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021) (same); United States v. Gonzalez Zambrano, No. 18-CR-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) (similar). Accordingly, Shaw's motion cannot be granted on pandemic-related grounds.

Shaw also argues that the court would not classify him as a career offender if he were sentenced today. Mot., ECF No. 615, at 7–8. Shaw contends that he is not a career offender because post-sentencing precedents have since clarified that Virginia burglary is not a crime of violence and, as such, is not a career offender predicate offense. Id. at 8 (citing, e.g., Castendet-Lewis v. Sessions, 855 F.3d 253 (4th Cir. 2017)). Without the career offender designation and after receiving a comparable reduction to the one he received to his original sentence, Shaw argues that he would be sentenced to 194 months today, rather than the 216-month sentence he is currently serving. Id. at 8.

The government does not address whether or not Shaw would be considered a career offender if sentenced today. Instead, it argues that this court has no authority to grant him compassionate release on those grounds. Mem. in Opp'n, ECF No. 630, at 15. The Fourth Circuit explicitly rejected this argument in McCoy. Because the policy statement in § 1B1.13, as currently written, is inconsistent with the First Step Act, the application notes are unpersuasive and not binding on the court. McCoy, 981 F.3d at 284 ("'Nothing in § 3582(c)(1)(A)(i) requires courts to sit on their hands' if there is a gap in Commission policy.")

7

(quoting United States v. Rodriguez, 451 F. Supp. 3d 392, 400 (E.D. Pa. 2020)). In McCoy, the Fourth Circuit held that "[w]hen a defendant exercises his new right to move for compassionate release on his own behalf . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." Id.; see also Stinson v. United States, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with . . . that guideline."). The Fourth Circuit held that, "where the Commission fails to act, then courts make their own independent determinations of what constitutes an 'extraordinary and compelling reason[]' under § 3582(c)(1)(A), as consistent with the statutory language, which 'directly instructs courts to "find that" extraordinary circumstances exist.'" Id. (quoting Rodriguez, 451 F. Supp. 3d at 400) (emphasis in original). Therefore, the court will consider whether Shaw has demonstrated extraordinary and compelling reasons to warrant a reduction in his sentence, including reasons other than those enumerated in the application notes to § 1B1.13. McCoy, 981 F.3d at 285–86; see also United States v. Arey, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020); United States v. Trice, No. 7:13-cr-00034, 2021 WL 402462, at *8 (W.D. Va. Feb. 3, 2021) (finding that the defendant's change in career offender status if sentenced today was an "extraordinary and compelling reason" under the compassionate release statute).

The court agrees that Shaw, if sentenced today, would not receive the career offender designation because his attempted burglary conviction is not a predicate offense. Section 4B1.1(a) provides that a defendant is a career offender if, among other things, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance

8

offense." Section 4B1.2(a) defines the "crime of violence" predicate offense for career offender status. As Shaw notes in his motion, subsequent case law makes clear that Virginia burglary, attempted or otherwise, does not qualify as a crime of violence. See, e.g., Castendet-Lewis v. Sessions, 855 F.3d 253, 264 (4th Cir. 2017) ("Utilizing the categorical approach, we are also satisfied that the Virginia offense of statutory burglary criminalizes more conduct than the generic federal offense of burglary. The DHS therefore erred in classifying Castendet's conviction as an aggravated felony."); see also Joyner v. United States, 263 F. Supp. 3d 629, 631 (E.D. Va. 2017) ("Based on the decision in Castendet–Lewis, the court agrees with the United States and the Petitioner that the Petitioner's prior two convictions for [Virginia] statutory burglary no longer support an ACCA enhancement.").

Moreover, Amendment 798[7] to the U.S.S.G. replaced paragraph (2) of § 4B1.2(a), which provided that a "crime of violence" for purposes of the career offender predicate "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another." Section 4B1.2(a)(2) in its current form provides a new list of enumerated offenses which does not include "burglary of a dwelling" and contains no catchall, "residual clause" under which a court could classify a non-enumerated offense as being a "crime of violence." For these reasons, Shaw's attempted burglary conviction is not a career offender predicate today.

Shaw argues that, if sentenced today, he would receive a sentence of 194 months, rather than his current 216-month sentence. Mot., ECF No. 615, at 8. Without the career offender

---

[7] See United States Sentencing Commission, Guidelines Manual, Appendix C, Amendments to the Guidelines Manual, Amendment 798, available at https://www.ussc.gov/guidelines/amendment/798 (last visited July 13, 2021).

9

status, his guidelines range would decrease from 360 months to life (offense level 37 and criminal history category VI) down to 324 to 405 months (offense level 37 and criminal history category V). Applying the same 40 percent downward variance to this guidelines range, Shaw argues that the court would sentence him to 194 months today, or 22 months less than his current sentence. Id.

In McCoy, 981 F.3d at 285–86, the Fourth Circuit held that "courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." The McCoy court noted that "[t]he First Step Act's clarification of § 924(c) resulted in not just any sentencing change, but an exceptionally dramatic one." Id. at 285. The court's analysis focused on the "'gross disparity' between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." Id. In Arey, 461 F. Supp. at 350, this court granted compassionate release when the defendant's sentence would be almost 38 years shorter if sentenced today due to a guidelines amendment. In United States v. Williams, No. 5:12-cr-14, 2020 WL 5834673, at *23–24 (W.D. Va. Sept. 30, 2020), this court found that a sentence reduction from mandatory life to 188 months was "extraordinary and compelling." In Trice, 2021 WL 402462, at *8, another member of this court concluded that a change in guidelines range calculations from 151 to 188 months down to a range of 100 to 125 months—a 51 to 63 month shift—if sentenced today was "extraordinary and compelling."

While lower than the sentence reductions considered in McCoy, 22 months is almost two years of Shaw's life. It is more than 10 percent of his current 210-month sentence. Those 22 months are undoubtedly extraordinary and compelling to Shaw, and the court agrees that

10

the disparity is significant. Thus, the court finds that the 22-month discrepancy between Shaw's current sentence and the sentence he would be given if sentenced today meets the threshold discussed in McCoy, and Shaw's change in career offender status if sentenced today is an "extraordinary and compelling" reason to warrant a sentence reduction under § 3582(c)(1)(A).

  iii. <u>A sentence reduction is appropriate after considering the § 3553(a) factors.</u>

Having found that extraordinary and compelling reasons exist to warrant a reduction in Shaw's sentence, the court must consider if a reduction is consistent with the applicable § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A). Those factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner. See 18 U.S.C. § 3553(a).

The government argues that the § 3553(a) factors weigh in favor of continued incarceration because Shaw was involved in a drug trafficking conspiracy, Shaw once received a firearm in exchange for heroin, Shaw has an incident of misconduct on his BOP Disciplinary Records, and Shaw has a number of prior convictions for possession of controlled substances, as well as two attempted burglary-related convictions from 1993 and 1995, respectively. Mem. in Opp'n, ECF No. 630, at 17.

The court disagrees with the government and finds that the § 3553(a) factors weigh in favor of a sentence reduction. Shaw's one BOP infraction involved no violence or drugs, and his BOP disciplinary record is otherwise clean. Shaw's criminal history is not short, but it also is not violent. The court also received two letters from Shaw's daughters expressing their concern for their father during the COVID-19 pandemic and demonstrating a degree of support in the community upon release. See Letters, ECF No. 609. Shaw indicates that he plans to live with his wife and three children upon release. Mot., ECF No. 615, at 8. Overall, the court finds that a sentence reduction is not inconsistent with the goals of specific and general deterrence. At the time Shaw was sentenced, his total offense level was a 37 and, as a career offender, he fell into criminal history category VI, making his guidelines range 360 months to life. The court varied downwards to 216 months, a 40 percent reduction from the low end of the guidelines, based on a motion from the government. Had he not been classified as a career offender, Shaw would still have a total offense level of 37, but his criminal history category would be V. This would make his guidelines today 324-405 months. Applying the same 40 percent reduction, Shaw's sentence would be 194 months. The court finds that the § 3553(a) factors weigh in favor of reducing Shaw's sentence to 194 months.

**IV.**

For these reasons, the court will **GRANT** Shaw's motion for compassionate release, ECF No. 615, and reduce his sentence to 194 months. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: July 13, 2021

Michael F. Urbanski
Chief United States District Judge