IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

04/15/2026

LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

UNITED STATES OF AMERICA      )
                              )    Case No. 5:13-cr-00025
v.                            )
                              )
                              )    By:   Michael F. Urbanski
KAREEM ALLEN SHAW,            )    Senior United States District Judge
Defendant/Petitioner          )

## MEMORANDUM OPINION

This matter comes before the court on defendant Kareem Allen Shaw's second motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), commonly known as a motion for compassionate release. ECF No. 713. The government filed a response in opposition to Shaw's motion, to which Shaw has replied, ECF Nos. 723, 726. For the reasons stated herein, the court will grant Shaw's motion and reduce his sentence from 194 months to 175 months.

### I. Background

On October 30, 2014, Shaw pled guilty to one count of conspiring to possess with intent to distribute a measurable quantity of a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. Plea Agreement, ECF No. 251. As shown in his presentence investigation report (PSR), Shaw's adjusted offense level was 40, reduced to 37 because of his acceptance of responsibility. PSR, ECF No. 452 ¶¶ 31–40. His criminal history score of 10 placed him in criminal history category V, but his designation as a career offender elevated him to category VI. Id. ¶¶ 51–52. With a total offense level of 37 and career offender category of VI, his United States Sentencing Guidelines (USSG or guidelines) range was 360 months to life. Id. at 19. On April 22, 2015, the court sentenced Shaw to 216 months of incarceration and 5 years of supervised release. J., ECF No. 445.

Shaw's 216-month sentence represented a forty percent reduction from the low end of his guidelines range of 360 months to life.

On August 16, 2020, Shaw filed his first motion for compassionate release, arguing among other things that following a change in the law, he no longer would be considered a career offender under § 4B1.1(a) of the guidelines. ECF No. 615. The court agreed, finding that after Castendet-Lewis v. Sessions, 855 F.3d 253, 264 (4th Cir. 2017), Shaw's predicate offense of attempted burglary no longer qualified as a crime of violence for purposes of USSG § 4B1.1(a). See discussion, United States v. Shaw, No. 5:13-cr-25, 2021 WL 3007266, at *4–5 (W.D. Va. July 15, 2021). Without the career offender enhancement, Shaw's criminal history category was V rather than VI, making his guidelines range 324 to 405 months. The court applied the forty percent reduction to the low end of the guidelines range, and, after assessing the 18 U.S.C. § 3553(a) factors, reduced Shaw's sentence from 216 months to 194 months. Id. at *6.

On May 13, 2024, Shaw filed a pro se motion for a sentence reduction pursuant to Amendment 821 of the sentencing guidelines. Effective November 1, 2023, the United States Sentencing Commission (the Commission) amended Chapter 4 of the sentencing guidelines which addresses a defendant's criminal history. See Amendment 821, USSG Supp. to App. C (Nov. 2023). The Commission made Part A and Part B, Subpart 1, of Amendment 821 retroactively applicable, allowing eligible defendants to seek a discretionary sentence reduction under 18 U.S.C. § 3582(c)(2). See USSG §1B1.10(d). Part A of Amendment 821 limits the overall criminal history impact of status points, resulting in a reduced criminal history score.

2

USSG §4A1.1(e).[1] Under the revised guideline, if a defendant received at least 2 status points, status points are decreased by 1 point for individuals with 7 or more criminal history points and status points are eliminated for those with 6 or fewer criminal history points.[2]

Shaw initially was assessed two status points, giving him a total of 10 criminal history points, which established a criminal history category of V. PSR, ECF No. 452 ¶¶ 50, 51. However, his status as a career offender increased his criminal history category to VI. Id. ¶ 52. After Amendment 821, Shaw would receive only 1 criminal history point, reducing his total points to 9, and in turn reducing his criminal history category to IV. Addendum to PSR, ECF No. 695. The combination of his total offense level of 37 and a criminal history category of IV would result in a reduced guidelines range of 292 to 365 months. But because he was classified as a career offender, his criminal history category remained a VI and his resulting guidelines sentence remained 360 months to life. For this reason, the court denied his motion to reduce his sentence pursuant to Amendment 821. Order, ECF No. 705; Statement of Reasons, filed under seal on August 16, 2024.

Shaw currently is housed at Federal Correctional Institution Milan and has a projected release date of February 19, 2029.[3]

In this second motion for compassionate release, Shaw seeks a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), arguing that because this court found in 2021 that if he were

---

[1] Status points are added to a criminal defendant's criminal history score when the instant offense was committed while the defendant was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. See USSG § 4A1.1(e).

[2] The change implemented by Part B of Amendment 821 is found at USSG § 4C1.1 and provides a decrease of two levels from the offense level determined under Chapters Two and Three for a defendant who did not receive any criminal history points under Chapter Four, Part A, and whose offense of conviction did not involve specific aggravating factors. This change had no effect on Shaw's criminal history calculation.

[3] https://www.bop.gov/inmateloc/ (last viewed Apr. 1, 2026).

sentenced today he no longer would be a career offender, it can reduce his sentence based on the changes brought about by Amendment 821. The government counters that (1) Shaw did not exhaust his administrative remedies; (2) the Commission exceeded its authority when it promulgated USSG § 1B1.13(b)(6); (3) Shaw cannot establish that a change in the law produced a grossly disparate sentence; and (4) the 18 U.S.C. § 3553(a) factors weigh against a sentence reduction.

## II. Analysis

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act (FSA), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Shaw's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

4

## A. Exhaustion

The exhaustion requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." United States v. Muhammad, 16 F. 4th 126, 129–31 (4th Cir. 2021). "The purpose of the statutorily-mandated exhaustion period is clear: to provide BOP with the first opportunity to evaluate a prisoner's request. Congress determined that BOP, not the Court, is better positioned to first evaluate a defendant's request and consider whether modification of a term of imprisonment is appropriate." United States v. Beahm, No. 1:05-CR-249, 2020 WL 4514590, at *1 (E.D. Va. Aug. 5, 2020).

Shaw asserts that he emailed a request to the warden of the facility where he is incarcerated on July 26, 2024, and did not receive a response. Mot., ECF No. 713 at 3–4. He did not attach a copy of the email to his motion and the government asserts that without a copy of the correspondence that Shaw sent to the warden, it will not concede exhaustion. Resp., ECF No. 723 at 11–12. In Shaw's reply, he stated under penalty of perjury that he emailed his request to the RIS coordinator in May or June 2024 and received no response.[4] He further stated that he tried to obtain a copy of the email from prison authorities without success. Statement, ECF No. 726-1. Shaw also made a second request for a sentence reduction to the warden on July 2, 2025, and received no response. Email, ECF No. 726–2. The government did not respond further to Shaw's claims regarding exhaustion.

---

[4] It is believed that "RIS" is an acronym for "Reduction in Sentence."

While the exhaustion requirement is a non-jurisdictional claim-processing rule and can be waived by the government, Muhammad, 16 F.4th at 129–130, when the government raises exhaustion as a defense, the district court must address the issue. United States v. Spencer, No. 20-7171, 2022 WL 355775 (4th Cir. 2022) (per curiam). See also Rice v. Rivera, 617 F.3d 802, 810 (4th Cir. 2010) ("Claim-processing rules, by contrast, are to be rigidly applied when invoked by a litigant, but can be forfeited if not raised and pursued in a timely fashion.") Once the government raises the issue, the burden is on the defendant to show either that he has exhausted his remedies or that 30 days have passed since he made his request. United States v. Poole, No. 3:01-CR-00193-GCM, 2024 WL 4271587 at *1 (W.D.N.C. Sept. 23, 2024).

Although the claims-processing rule must be rigidly applied, courts may find that a defendant satisfied the requirement where he has attempted to seek administrative relief and strict compliance would be futile. United States v. Ogun, 657 F. Supp. 3d 798, 806 (E.D. Va. Feb. 24, 2023); United States v. Gibson, 570 F. Supp. 3d. 346, 354 (E.D. Va. Nov. 5, 2021). The court finds that this case fits those criteria.

Shaw avers that he emailed the RIS coordinator asking for a reduction in his sentence but received no response, and that his request for a copy of the email he sent went unanswered. He made a second request for a sentence reduction on July 2, 2025, albeit after he had filed his motion with this court, and received no response. Under these circumstances, the BOP has had an adequate opportunity to address Shaw's request and dismissing his case without prejudice so that he could refile it would be futile and a waste of judicial resources. Accordingly, the court finds that Shaw exhausted his administrative remedies and will address his claim on the merits.

6

## B. Extraordinary and Compelling Reason

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), requires that any reduction based on an extraordinary and compelling reason be consistent with applicable policy statements issued by the Commission. But, between the time the FSA was passed in December 2018 and March 2023, there were no "applicable policy statements" to reference, because the Commission lacked a quorum and could not act. See discussion, United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020).[5] In the absence of applicable policy statements, courts looked to relevant sentencing guidelines provisions to determine whether a motion presented an extraordinary and compelling reason warranting a sentence reduction. United States v. Davis, 99 F.4th 647, 654 (4th Cir. 2024). Courts in the Fourth Circuit (and other circuits) held that a change in law that resulted in a gross disparity between the sentence a defendant received and the sentence that he likely would receive were he convicted after the change, could be an extraordinary and compelling reason warranting a sentence reduction. See McCoy, 981 F.3d at 286, and the cases that followed it.

In March 2023, the Commission achieved a quorum and adopted revised guidelines that became effective November 1, 2023. Included in the revisions were policy statements addressing motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023). The policy statement in the revised guidelines now provides in USSG § 1B1.13(b) that an "extraordinary and compelling" reason

---

[5] See also U.S. Sentencing Comm'n Annual Report 2–3 (2019) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.

7

warranting compassionate release can exist under any of the following circumstances, each of which includes detailed requirements and caveats: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) victim of abuse; (5) other reasons; and (6) unusually long sentence.

Shaw seeks relief under USSG §§ 1B1.13(b)(6) and (c), which provide that in some circumstances, when a defendant is serving an unusually long sentence, a change in the law can create an extraordinary and compelling reason that warrants a sentence reduction:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> (c) Limitation on Changes in Law.--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

### (1) Sentencing Commission's Authority to Promulgate USSG § 1B1.13(b)(6).

Before addressing Shaw's arguments on the merits, the government asserts that the Commission exceeded its authority when it amended the policy statement at USSG § 1B1.13(b)(6), and that the policy statement is at odds with 18 U.S.C. § 3582(c)(1)(A)'s plain

8

text, context, and purpose, and also that it is in tension with the doctrine of separation of powers. However, these arguments are foreclosed by the Fourth Circuit's decision in Davis and the Supreme Court's decision in Concepcion v. United States, 597 U.S. 481, 487 (2022).

In Davis, the Fourth Circuit held that a change in case law can constitute an extraordinary and compelling reason for compassionate release. The court first quoted McCoy, 981 F.3d at 287 (cleaned up), for its statement that "the very purpose of § 3582(c)(1)(A) is to provide a safety valve that allows for sentence reductions where there is not a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify a reduction." Davis, 99 F.4th at 657. The court next quoted Concepcion, 597 U.S. at 487, which held that "[b]ecause district courts are always obligated to consider the nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them." Davis, 99 F.4th at 657. The court concluded that Concepcion and the Commission's policy statement in § 1B1.13(b)(6) "serve to confirm and amplify" the court's earlier ruling in McCoy that "[n]on-retroactive changes in law remain relevant when a court has to decide when and how to modify a sentence," and a court abuses its discretion when it fails to do so. Id. at 658.

Although the Fourth Circuit did not parse the language of § 1B1.13(b)(6) in connection with 18 U.S.C. § 3582(c)(1)(A), given the court's unequivocal holding that non-retroactive changes in the law may warrant compassionate release, this court has no basis for finding that the Commission exceeded its authority when it promulgated USSG § 1B1.13(b)(6), that the policy statement is at odds with 18 U.S.C. § 3582(c)(1)(A)'s plain text, context, and purpose, or that it creates tension between the legislative and executive branches of government such

9

that the court should not follow it. See also United States v. Spencer, No. 2:11-cr-30, 2025 WL 572398, at *4 (E.D. Va. Feb. 13, 2025) (finding government's argument that the Commission exceeded its authority when it promulgated § 1B1.13(b)(6) unpersuasive and unsupported by established precedent); United States v. Powell, No. 5:17-CR-00169-M-2, 2024 WL 4778029 at *3, n.1 (E.D.N.C. Nov. 13, 2024) (rejecting argument that the Commission exceeded its statutory authority based on Concepcion and Davis); and United States v. Dire, No. 2:10cr56, 2024 WL 4259871, at *3 n.3 (E.D. Va. Sept. 20, 2024) (rejecting argument by government that the Commission exceeded its authority when it authorized district courts to consider non-retroactive statutory amendments as a basis for compassionate release); see also United States v. Berry, Nos. 1:05-CR-118, 1:05-CR-119, 2024 WL 4466828 (M.D.N.C Oct. 10, 2024) (finding without discussion of whether the Commission exceeded its authority that a sentence reduction was consistent with § 1B1.13(b)(6) based on intervening changes to 18 U.S.C. § 924(c) and the sheer length of the defendant's sentence).

The court finds that §§ 1B1.13(b)(6) and (c) of the guidelines are consistent with 18 U.S.C. § 3582(c)(1)(A) and 28 U.S.C. § 994(t). The Commission did not exceed its authority when it amended the policy statement, and the court will apply the Commission's interpretation of what constitutes an extraordinary and compelling circumstance warranting a sentence reduction to Shaw's case.

**(2) Change in the Law**

Shaw argues that the court can reduce his sentence under USSG § 1B1.13(b)(6) and (c), which, as set forth above, provide that in some circumstances, when a defendant is serving an unusually long sentence, a change in the law can create an extraordinary and compelling reason

10

that warrants a sentence reduction. Shaw has served more than 10 years of his sentence, thus satisfying the first criterion. The remaining question is whether a change in law has produced a gross disparity between the sentence Shaw is serving and the sentence that likely would be assessed if he were sentenced today.

When Shaw came before the court in 2024 asking for a sentence reduction under Amendment 821, he did so pursuant to 18 U.S.C. § 3582(c)(2), which provides that when a defendant has been sentenced to a term of imprisonment based on a sentencing range that subsequently has been lowered by the Commission, the court may reduce a term of imprisonment if the reduction is consistent with the applicable policy statements issued by the Commission and after consideration of the § 3553(a) sentencing factors. That subsection of the statute offers no mechanism by which a court can take into account other changes in the law when it modifies the sentence. Because the court could not consider the fact that Shaw would no longer be a career offender after the changes brought about by Castendet-Lewis, 855 F.3d at 264, it denied his motion for a sentence reduction because his status as a career offender foreclosed relief.

In Shaw's current motion, he seeks a sentence reduction under § 3582(c)(1), which, by reference to USSG §§ 1B1.13(b)(6) and (c), does provide a mechanism by which a court can consider whether a change in law presents an "extraordinary and compelling" reason for a reduction. Shaw asks the court to consider that if he were sentenced today, he would not be designated a career offender, and without that designation, the changes brought about by Amendment 821 would apply to him, meaning that he would receive 9 criminal history points instead of 10. That would place him in criminal history category IV, which, when considered

with his total offense level of 37, would result in a guidelines range of 292 to 365 months. A forty percent reduction off the bottom of the guidelines range would result in a sentence of 175 months.

The government argues that even if Shaw's sentencing range today would be 292 to 365 months, that his sentence of 216 months, later reduced to 194 months, is not grossly disproportionate to the sentence he likely would receive today. It also argues that the court balanced the circumstances of his criminal activity and his criminal history with other factors introduced at sentencing to arrive at the 216-month sentence. Resp., ECF No. 723 at 23. While this certainly is true, the court arrived at the sentence of 216 months in the context of its understanding that under the guidelines, Shaw was to be sentenced as a career offender and that he had 10 criminal history points. The court acknowledged the change to his career offender designation in its 2021 opinion, and it is appropriate to acknowledge here that if Shaw were sentenced today, not only would he not be classified as a career offender, but after promulgation of Amendment 821 his guidelines sentence would be 292 to 365 months. A forty percent reduction to that sentence, which the parties agreed to at the time Shaw was sentenced, would result in a sentence of 175 months.

The court finds that the 19-month difference between Shaw's current sentence of 194 months and the 175-month sentence he likely would be assessed today is a "gross disparity" that establishes an extraordinary and compelling reason for a sentence reduction in accordance with USSG §§ 1B1.13(b)(6). See United States v. Hart, No. 1:94-cr-00423, No. 1:95-cr-00087, 2024 WL 3974230, at *5 (E.D. Va. Aug. 28, 2024) (finding an extraordinary and compelling reason for a sentence reduction when defendant would no longer be considered a career

12

offender, making him eligible for a sentence reduction after promulgation of Amendment 821.)

### C. 18 U.S.C. § 3553(a) Factors

Having found that an extraordinary and compelling reason exists to warrant a reduction in Shaw's sentence, the court must consider if a reduction is consistent with the applicable § 3553(a) factors. Those factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available and the applicable sentencing ranges; and any pertinent policy statement. See 18 U.S.C. § 3553(a).

Shaw had a leadership role in a large drug distribution conspiracy that lasted approximately a year and a half and was responsible for distributing heroin and crack cocaine in Virginia. A conservative estimate of drug weight distributed by the conspiracy was eight kilograms of heroin and multiple kilograms of crack cocaine. PSR, ECF No. 452 ¶ 22. There was evidence that on at least one occasion Shaw accepted a firearm in trade for heroin. Id. ¶ 32. The court is well aware of the devastation wrought by illegal drugs and firearms in the Western District of Virginia and Shaw's role in this conspiracy weighs against a sentence reduction.

13

Regarding Shaw's history and characteristics, he began using alcohol, marijuana, and cocaine at the age of 17. From 2002 through 2004 he used marijuana laced with crack cocaine when it was available. He dropped out of school after completing the tenth grade and obtained a GED while incarcerated. Id. ¶ 67. Shaw's criminal history was non-violent, although during a 2003 traffic stop a search of his vehicle revealed a 9 mm semi-automatic handgun. Id. ¶ 46.

Since being incarcerated in 2015, Shaw has had one disciplinary incident where he was found guilty of escape in June 2022. He was disciplined with the loss of 167 days of good conduct time and the loss of phone and visitation privileges for one year. Inmate Disp. Data, ECF No. 726-3 at 5.[6] In addition, he was prosecuted for the escape in the Eastern District of Virginia where he pled guilty and was sentenced to a term of eight months, the top of the guidelines range for the offense, to be served consecutively to his drug conspiracy conviction in this court. United States v. Shaw, No. 3:22-CR-00105-REP-1 (E.D. Va. Dec. 1, 2022) (located herein at ECF No. 723-1). According to the indictment and statement of facts filed in the escape case, Shaw was housed at the minimum-security Petersburg Satellite Camp when he and three other inmates walked away from the camp in the middle of the night. Three days later, Shaw returned to the camp and surrendered himself. ECF Nos. 1, 14 in No. 3:22-cr-00105. Despite the escape conviction, Shaw is classified as a low risk for recidivism and his security classification is low. Inmate Profile, ECF No. 726-3 at 4. Shaw has taken a number of classes offered by the various institutions where he has been housed. Inmate Education Data,

---

[6] The Inmate Disciplinary Data sheet indicates that Shaw forfeited 180 days of "NVGCT." The data sheet also states that Shaw was "disallowed 41 days lost GCT." ECF No. 726-3 at 5. In a document filed in Shaw's case in the Eastern District of Virginia, the United States represented to the court that Shaw lost 167 days of good time credit. ECF No. 35 in United States v. Shaw, No. 3:22-CR-00105-REP-1 (E.D. Va. Dec. 1, 2022).

ECF No. 726-3 at 1. Considered as a whole, Shaw's history and characteristics are neutral factors in determining whether a sentence reduction is warranted.

Looking next at the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, the court finds that a sentence of 175 months is sufficient to address these criteria. Such a sentence is substantial, and the court does not believe that additional time is necessary to achieve the punitive and deterrent goals of punishment. Nor does the court find that additional time is necessary to provide Shaw with educational or vocational training, medical care, or other correctional treatment.

Looking at the kinds of sentences available and the applicable guidelines range, as discussed above, if Shaw were sentenced today, his guidelines range would be 292 to 365 months. Applying the same forty percent reduction to the low end of the guidelines that the court found appropriate at Shaw's original sentencing would result in a sentence of 175 months. This factor weighs in favor of a sentence reduction. Regarding consideration of pertinent policy statements, as set forth above, the court finds that reducing Shaw's sentence to 175 months is consistent with USSG §§ 1B1.13(b)(6) and (c).

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Shaw's case. Given the circumstances of his case, including the facts related to the offense, Shaw's history and characteristics, the changes brought about by Amendment 821, and the relevant guidelines, the court concludes

15

that a sentence of 175 months is appropriate. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Shaw's conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public.

### III. Conclusion

For these reasons, the court will **GRANT** Shaw's motion for a sentence reduction, ECF No. 713, and reduce his sentence to 175 months.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: *April 14, 2026*

Michael F. Urbanski
Senior United States District Judge

16